By ti-ie Court.
One, H. E. Kimble, alias George L. Gross, was indicted by the grand jury of Summit county, Ohio, on a charge of embezzling $2,125. It was charged in the indictment that said Kimble, alias Gross, was then and there acting as an agent of The Cleveland National Fire Insurance Company and that by virtue of such agency he came into possession-of said $2,125, which he embezzled. Upon the trial of the case, at the close of the state’s evidence, the defendant moved the court for his discharge upon the ground that the crime charged in the indictment had not been proven.
*163 The court sustained the motion, directed a verdict and discharged the accused. Exceptions to the ruling of the court and its judgment upon said motion were taken by the prosecuting attorney and are now before this court for review.
Counsel supporting the judgment of the court of common pleas rely on three grounds as stated in their brief:
“First. The record does not show that the defendant was the agent of The Cleveland National Fire Insurance Company.
“Second. If any agency existed, it was between the defendant and one James E. Millikin, who was the sales agent of The Cleveland National Fire Insurance Company.'
“Third. That if any offense was committed by the defendant it was the offense of larceny or the offense of obtaining money by false pretenses.”
The written contract of agency in evidence purports to be between “The Cleveland National Fire Insurance Company, Cleveland, Ohio, first party, and H. E. Kimble, Scranton, Pa., Lycoming Building, second party.” The same is signed “The Cleveland National Fire Insurance Company by James E. Millikin, General Manager, H. E. Kimble, second party.” Here was direct positive evidence to sustain the allegations of the indictment, and there is nothing in the record to substantially contradict it. Millikin was only an agent of the insurance company and signed as such. Kimble was a sort of subagent, under Millikin, of the same insurance company, This is confirmed not only by *164 the written contract between the' insurance company and Kimble, but also by the written contract between Millikin and the insurance company. Therefore, upon the question as to whether there was evidence of agency, it is sufficient to say that there was an abundance of it, which should have called for the submission of that issue to the jury.
And even if it were not so, the overwhelming weight of authority, common sense and reason call for the application of the doctrine known as estoppel against the defendant. We too often lose sight of the primary purpose of criminal statutes. They are enacted to protect the public by prohibiting crime and punishing criminals. If a man is agent enough to get possession of money for and in the name of his principal, he is also agent enough to be convicted of embezzlement as such agent. Wharton, Bishop and McLean all agree with this doctrine, and the same has been applied in principle in several Ohio cases.
State v. Pohlmeyer, 59 Ohio St., 496: “And the rule that one who receives money or any other thing of value in the assumed exercise of authority as agent for another, is estopped thereafter to deny such authority, applies in criminal prosecutions as well as in civil actions.” Also State v. Carter, 67 Ohio St, 422.
It matters not that Kimble may have been Gross, Jones or Smith. The actual relation between the individual and company was that of principal and agent. His name had. nothing to do with it. It was simply his label for convenient identification. *165 It is claimed also that the crime proven by the state was larceny and not embezzlement; that the intent to appropriate or convert this money was the result of a conspiracy between Kimble and others to use this agency as a mask or device to steal the money coming into their hands, and that, therefore, the intent to appropriate, convert or embezzle the money preceded the possession of the money and hence could not have been embezzlement.
It is sufficient to say, however, that there was ample evidence to go before the jury upon this issue of fact as to when the intention to appropriate was formed. Like the question of agency, the question of intent is purely a question of fact, with which the courts have nothing whatsoever to do in the trial of a criminal cause. Such questions are to be determined by juries. Ordinarily a claim by the defendant that he was not an embezzler but a thief would not receive very great favor. It is, however, but just to say that as compared with an embezzler a thief is eminently respectable. An embezzler wins personal confidence whereby he obtains property in trust only to betray that trust and to play the part of traitor, which crime he adds to that of wrongfully appropriating the money.
A general criminal intent to convert all moneys coming into one’s possession does not satisfy the demands of the statute of embezzlement. It must be an intention to convert the identical money actually converted, and it is difficult for one to imagine that there was any intention to convert the money charged in the indictment until the time *166 "at which the money came into the possession of the defendant. At least that seems the more probable theory, so much so that any jury would be amply warranted upon the evidence in the cause in finding Kimble guilty of the crime charged.
Courts must get away from these technical tweedledees and tweedledums, especially so in cases entirely beyond their jurisdiction — matters upon which it is the duty of the jury to pass and not the court. Most of our antiquated, technical precedents had their beginning in a period of English jurisprudence when more than two hundred crimes were capital. The hardships and severities of the law were such that it was as difficult for an innocent man to escape conviction as it now is for a guilty man to be convicted.
The exceptions are therefore accordingly sustained.

Exceptions sustained.

Nichols, C. J., Shauck, Johnson, Donahue, Wanamaker and Newman, JJ., concur.